**Sheldon G. ADELSON and Sandra Adelson**

v.

**The UNITED STATES.**

**No. 112–76.**

United States Claims Court.

June 14, 1983.

---

Robert S. Lappin, Boston, Mass., for plaintiffs. Barry C. Klickstein and Slavet & Westcott, Boston, Mass., of counsel.

Ellen C. Specker, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

SPECTOR, Senior Judge.

After this tax refund suit had been fully tried, briefed and decided,[1] defendant filed a Motion for Rehearing and to Reopen Proof. A brief summary of the history and holding in the case will serve to frame the issue now raised by defendant's motion, and plaintiff's response thereto.

1. *Sheldon G. Adelson and Sandra Adelson v. United States,* 1 Cl.Ct. 61, 553 F.Supp. 1082 (1982).

2. Sheldon G. Adelson, whose business affairs were under examination. His wife is named as

*Statement of Facts*

The original issues in this tax refund suit were whether or not various sums advanced by plaintiff[2] to a number of business entities and thereafter not repaid, were debts, and if they were, whether they constituted business (rather than nonbusiness) debts. Section 166(a) of the Internal Revenue Code of 1954, as amended,[3] allows as a deduction any business debt which becomes worthless within the taxable year. In considering the present motion, it is important to note that, alternatively, and "(i)n lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary) a deduction for a reasonable addition to a reserve for bad debts."[4]

Because the deduction is not allowed in the case of a nonbusiness debt owed to a taxpayer other than a corporation, it was necessary for plaintiff to establish initially that the debts were created or rendered worthless in connection with his trade or business. Plaintiff did so establish at a 2-day trial at which he presented a large number of witnesses, including himself and representatives of each of the various business entities to which sums had been advanced but not repaid.

Plaintiff also presented as an expert witness a certified public accountant, tax specialist, and partner in the accounting firm of Price, Waterhouse who testified that the additions to a reserve for bad debts were reasonable and properly made. Plaintiff also introduced a large quantity of exhibit evidence. It is highly significant in reviewing defendant's present Motion for Rehearing and to Reopen Proof that no witnesses whatever were offered by defendant at the trial of this case.

Based on the entire record, the court concluded that plaintiff was engaged in a trade or business, that the funds advanced to each of the various business entities were in fact

a party plaintiff solely because the couple filed joint returns for the taxable years in question.

3. 26 U.S.C. § 166(a).

4. 26 U.S.C. § 166(c).

loans and not contributions to capital, that a legitimate business purpose was the "dominant motivation"[5] underlying the making of each loan, and that they therefore qualified for treatment as business bad debts under Section 166 of the Code. These conclusions involved resolution of a number of fact-intensive issues as a prelude to a discussion of the amount of plaintiff's proposed deduction as a reasonable addition to a reserve for bad debts under Section 166(c). At all stages of the earlier administrative proceedings, and later in litigation before this court, defendant's position was diametrically opposed to those conclusions, and therefore its ultimate position was that plaintiff was entitled to deduct nothing as a reasonable addition to a reserve for bad debts.

Accordingly, with a view to affording the Secretary an opportunity to exercise his discretion as to the amount deductible as a reasonable addition to a bad debts reserve, the court concluded as follows:

> All of the foregoing considered, plaintiff is entitled to recover on his tax refund claim. The amount of recovery must, however, await a remand to the Secretary of the Treasury. Where, as here, the taxpayer has elected the reserve method of treating bad debts under Section 166 of the Code, it must still be determined whether his deductions from income for an addition to the bad debt reserve were reasonable in amount, and whether any disallowance by the Secretary in his discretion, would be unreasonable. Because the Commissioner's rejection of plaintiff's claim did not reach that issue, the Secretary has yet to exercise the discretion vested in him by statute to determine the reasonableness of plain-

tiff's proposed addition to a bad debt reserve. [Footnote omitted.]

> Accordingly, the case is remanded under Rule 60.1(a) to the Secretary of the Treasury for his determination in accordance with Section 166 of the Code. * *[6]

Defendant's reaction to the foregoing is the present Motion for Rehearing and to Reopen Proof.

### Discussion

The two grounds offered by counsel in support of the motion are puzzling to say the least. She asserts that Rule 60.1[7] applies only to non-tax cases because tax cases are not "appropriate matters" for remand. It is argued that "(P)laintiff's tax liability must be based *on the evidence offered at trial* and not any previous record developed at the administrative level. * * * For this reason, defendant submits that remand of this case to the Secretary of the Treasury was inappropriate and requests a *rehearing* on this issue." (Emphasis supplied.)

For her second point, counsel argues that "a remand is unnecessary, the Secretary of the Treasury having *already determined* that the advances in question did not become wholly or partially *worthless at the end of the year in question.*" (Emphasis supplied.) This statement, among other things, misconceives the election of plaintiff to proceed under Subsection 166(c) rather than 166(a) of the Code.[8] The brief goes on to further confuse the issue as follows:

> Even if this Court could remand a tax refund suit, a remand in this case would serve no useful purpose since the Secretary of the Treasury (through his delegate, the Commissioner of Internal Revenue) *has already exercised his discretion to determine the reasonableness of the*

---

5. The test prescribed in these cases. *See* 1 Cl.Ct. at 64 et seq., 553 F.Supp. at 1085 et seq.

6. 1 Cl.Ct. at 68–9, 553 F.Supp. at 1089.

7. Rule 60.1 Remand; Extension or Termination of Stay of Proceedings on Remand; Disposition of Case.

   (a) Remand.

(1) *Issuance of Remand Order.* At the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official, with such direction as may be deemed proper and just.

   \*    \*    \*    \*    \*    \*

8. *See* notes 3 and 4, *supra,* and related text.

*amount of the reserve addition* claimed as a deduction by plaintiff. The determination that plaintiff was not entitled to claim a deduction in 1969 was based on the *facts that plaintiff was not in a trade or business,*[9] *and* that he was not entitled to a reserve addition in the *amount* claimed. Whether the amount was reasonable (the Commissioner decided it was not) hinges on whether the outstanding advances were wholly or partially worthless *at the close of 1969,*[10] a question which, in turn, depends on the financial condition of the companies at that time. [Footnote omitted.[11]

\* \* \* \* \* \*

In sum, defendant submits that a remand of this case to the Secretary of the Treasury is unnecessary. Since the Secretary, through his delegate, has already exercised his discretion, a remand would be superfluous.

The issue of worthlessness has already been tried and briefed by the parties. It is now ripe for decision by the Court.

Plaintiff's response observes that defendant "having utterly failed to offer witnesses or make a record in support of its position at a two-day trial in Boston now brings a Motion for Rehearing and to Reopen Proof \* \* \*." Plaintiff further points out that:

While the plaintiff believes that the Court effectively concluded that the Secretary of the Treasury has not exercised his discretion, after analysis of defendant's motion, and affidavit, it does appear to plaintiff that such discretion has been exercised *de facto,* if not formally, and that exercise has been effected in an unreasonable and arbitrary manner. Therefore, there may now be no necessity for a remand to the Secretary.

\* \* \* \* \* \*

Having accepted this proposition, the Court should conclude that the Secretary,

clearly and convincingly, was arbitrary and unreasonable in the "exercise" of his discretion in this matter. Plaintiff offered witnesses at trial in support of each and every element of his case. Defendant offered none in rebuttal. Plaintiff offered numerous exhibits. Defendant offered nothing beyond documents provided by plaintiff. The Court had before it expert testimony as to the reasonableness of the additions to the bad debt reserve. Defendant offered nothing whatsoever on this issue.

Plaintiff also notes that defendant has confused the procedure for deducting a debt which becomes worthless within the taxable year (§ 166(a)) with the alternative procedure of deducting a reasonable addition to a reserve for bad debts (§ 166(c)). He cites the original opinion in this case [12] to the effect that "(t)he reserve method avoids the necessity of proving the exact year and degree of worthlessness of specific debts, and allows instead the deduction of an amount adequate to absorb losses *expected* to be incurred on *debts* outstanding at the end of the taxable year, said amount to be added to a bad debt reserve." (Emphasis supplied.)

Citing defendant's references to "*worthlessness at the end of the year in question*" (emphasis supplied), plaintiff notes that "(t)his demonstrated inability of the defendant at administrative levels, from appellate conferee to Secretary of the Treasury, to distinguish between the standard applicable to allowance of a bad debt deduction and to an addition to a bad debt reserve is cause for great concern among those who must regularly deal with the Service on behalf of their clients or themselves."

It is apparent from the foregoing that both parties now believe that a remand to the Secretary is unnecessary and futile.

9. The "trade or business" issue has been decided by the court in favor of the taxpayer.

10. The test under Subsection 166(a), not 166(c) which describes the test at issue in this case.

11. Emphasis supplied, except for words *"and"* and *"amount"*, which are emphasized in the original.

12. 1 Cl.Ct. at 64, note 10; 553 F.Supp. at 1085, note 10.

Defendant argues that "the Secretary, through his delegate, has already exercised his discretion * * *. The issue of worthlessness has already been tried and briefed by the parties. It is now ripe for decision by the Court." Plaintiff concludes that "the Court may now make a determination that, in accord with *Thor Power Tool v. Commissioner,* 439 U.S. 522, 547–48, 99 S.Ct. 773, 788–789, 58 L.Ed.2d 785 (1979), the taxpayer has borne his 'heavy burden' of proving not only that his reserve computation was correct, but also that the Commissioner's total rejection of the entire reserve computation is, per se, 'unreasonable and arbitrary'."

Accordingly, the remand order contained in the court's prior decision [13] is hereby *Vacated.* Defendant's Motion for Rehearing and to Reopen Proof is *Dismissed as Moot.*

The remaining issue now to be decided is as follows:

Was plaintiff's addition to a reserve for bad debts reasonable in amount, and, if so, did the Secretary abuse his discretion in disallowing it in its entirety?

The relevant Treasury Regulations on Income Tax [14] provide as follows:

*Reasonableness of addition to reserve —(1) Relevant factors.*

What constitutes a reasonable addition to a reserve for bad debts shall be determined in the light of the facts existing at the close of the taxable year of the proposed addition. The reasonableness of the addition will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, including those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve.

As previously noted, the uncontradicted testimony of plaintiff's expert witness was to the effect that the additions to the reserve were reasonable in amount and properly made. That does not, however, end the court's inquiry. As stated in *Thor Power Tool v. Commissioner, supra,* "the courts uniformly have held that the Commissioner's determination of a 'reasonable' (and hence deductible) addition must be sustained unless the taxpayer proves that the Commissioner abused his discretion. The taxpayer is said to bear a 'heavy burden' in this respect. He must show not only that his own computation is reasonable but also that the Commissioner's computation is unreasonable and arbitrary."

The record in this case supports that conclusion. The taxpayer has met his burden. The Commissioner has offered no computation in rebuttal but has, on the contrary, disallowed the proposed deduction in its entirety. The rationale for total disallowance is that the debts were not shown to be *worthless* at the end of the taxable year. That interpretation of Code § 166(c) is at odds with the wording of the Code, and with the implementing regulations above quoted.[15] The whole purpose of the reserve method is to obviate the need to prove the years and degree of worthlessness of specific debts. Defendant seeks to force plaintiff to use the procedure prescribed by § 166(a) while the statute specifically provides an alternative method as described in § 166(c).[16]

---

**13.** 1 Cl.Ct. at 69; 553 F.Supp. at 1089.

**14.** 26 C.F.R. § 1.166–4(b).

**15.** Defendant also appears to continue to argue at one point that "plaintiff was not in a trade or business" to support a finding of total disallowance. *See* note 9, *supra.* That issue was, of course, settled in the original opinion. 1 Cl.Ct. at 65, 553 F.Supp. at 1085.

**16.** The regulations (26 C.F.R. § 1.166–1(b)) provide:

*Manner of selecting method.* A taxpayer filing a return of income for the first taxable year for which he is entitled to a bad debt deduction may select either of the two methods * * * but such selection is subject to the approval of the *district director* upon examination of the return. * * *
If defendant now takes the position that plaintiff is in some way precluded from using the alternative procedure set forth in § 166(c), it could and should have taken that position initially by disallowing use of the reserve meth-

In summary, defendant's method of assessing, at zero, a reasonable addition to plaintiff's reserve account for bad debts is found on this record to be arbitrary, unreasonable, and an abuse of discretion. Even if the court, arguendo, were to apply the defendant's test of "worthlessness at the end of the year in question", the record also overwhelmingly reflects that plaintiff's outstanding loans were at least partially worthless at the end of 1969. Therefore, defendant's position is patently unsupportable and unreasonable under either test. Plaintiff is entitled to a reasonable addition to a reserve account for bad debts and the amounts added have been shown on this record to be reasonable.

### Conclusion

Plaintiff is entitled to recover on its tax refund claim in the amount of $163,506.16, together with interest on that amount as allowed by law, and judgment shall be entered in that amount.

od altogether. Instead it has taken issue not with the reserve method, but with the amount to be added to a bad debts reserve under the reserve method.